CORTINAS, J.
While in school, twelve year-old F.R. stated that because the victim was wearing a blue shirt, he was therefore a “Crip” and F.R. was going to stab him. Two days prior to this incident, F.R. had told the victim that he had previously been in jail for stabbing someone. The victim asked *573 what F.R. intended to use to stab him, and F.R. produced a folding knife from a pocket in his cargo pants. F.R. opened the blade and held it inches from the victim’s thigh. The victim raised his hand and asked to be excused from class, and immediately reported the incident to the school principal. The principal informed the dean of school discipline, who asked F.R. whether he had a weapon. F.R. admitted that he did, and produced the knife.
F.R. now appeals his conviction for possession of a concealed weapon pursuant to Florida Statutes section 790.01(1), “a person who carries a concealed weapon or electric weapon or device on or about his or her person commits a misdemeanor of the first degree.” (2010).[1] He argues that the trial court should have granted his motion for judgment of dismissal because section 790.001(18) excludes from the definition of weapon “a common pocketknife.” We affirm.
For the purposes of section 790.001(13), the Florida Supreme Court has clarified that a pocketknife is “a type of knife occurring frequently in the community which has a blade that folds into the handle and that can be carried in one’s pocket.” L.B. v. State, 700 So.2d 870, 372 (Fla.1997). The only other characteristic considered in L.B. was the length of the blade, though no bright line rule was articulated. On the basis of an opinion by the Attorney General that a pocketknife with a blade of four inches in length or less was a common pocketknife, the Florida Supreme Court vacated the conviction of the appellant, noting “neither the Attorney General nor this Court maintains ... a bright line cutoff for determining whether a particular knife is a ‘common pocketknife.’ We merely hold that appellant’s knife fits within the exception.” Id. at 373 n. 4. Ultimately, the question of whether a knife falls within the exception is not a legal conclusion, but remains a question for the fact finder. Id. at 372.
In the instant case, the officer who responded to the school incident testified that the knife could seriously injure a person. When asked if the knife could be called a common pocketknife, the officer testified that it could not. The blade of the knife was just shy of three inches long, with serrations along a portion of one side. The handle was curved, with grooves to accommodate a user’s fingers (a “notched grip”). There was a long screw protruding from the handle, which served as a makeshift hilt guard. When opened, the blade of the knife locks in an open position. Indeed, we have inspected the knife and find that the trial court was entirely correct in its determination that this was not a “common pocketknife.”
These characteristics have been found by various Florida courts to be those of a knife that does not qualify for the exception. The Florida Supreme Court has found that a blade that can be locked in an open position would not be a characteristic of a common pocketknife. Bunkley v. State, 882 So.2d 890, 891 (Fla.2004). This Court has found that a knife “which has a distinctive weapon-like characteristic such as a hilt guard or notched combat-style grip, does not fall within the common pocketknife exception.” J.R.P. v. State, 979 So.2d 1178, 1179 (Fla. 3d DCA 2008).[2] We *574 have also found a knife with these characteristics to be distinctly unlike the knife which qualified for the exception in L.B.:
The judge described J.D.L.R.’s knife as a folding knife with a pointed 3½ inch blade, notched combat-style grip and large metal hilt guard (to prevent the user’s fingers from sliding onto the blade). In contrast, the knife in L.B. ... was merely described as a folding “buck knife” with a 3¾ inch blade and an overall length of 8½ inches.
J.D.L.R. v. State, 701 So.2d 626, 626-27 (Fla. 3d DCA 1997).
F.R. concedes that the knife would not qualify for the exception while it was out, open, and being used to assault the victim, but insists that while the knife was closed and in F.R.’s pocket, it would not constitute a weapon for the purposes of a conviction of possession of a concealed weapon. This argument fails. The indelible characteristics of this particular knife, which are its notched grip, its locking blade mechanism, and its hilt guard, remain present even when the knife was concealed, thus eliminating this knife from the realm of ordinary pocketknives.
Affirmed.

. F.R. was also convicted of possession of a weapon on school grounds and assault with a deadly weapon, neither of which is under review on appeal.

. The Fourth District Court of Appeal has recently found that a knife with a three-and-one-quarter inch, partly serrated blade, with a grooved handle to allow a secure grip, would qualify for the exception, particularly when, as here, it is not carried in an open and locked position. T.S.W. v. State, 82 So.3d 1021, 2011 WL 3586168 (Fla. 4th.DCA, 2011). *574 However, this determination is a factual question, and L.B. specifically held that judges and juries may reach inconsistent conclusions: "it is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept.” L.B., 700 So.2d at 373 (quoting Roth v. United States, 354 U.S. 476, 492 n. 30, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).